BP-A0304 **DISCIPLINE HEARING OFFICER REPORT** IR#: 4229600
Reg#: 28670-037
Dept. of Justice / Federal Bureau of Prisons WILFORD, RICHARD

| | |
|---|---|
| Institution: **SCHUYLKILL FCI** | Incident Report Number: **4229600** |
| NAME OF INMATE: **WILFORD, RICHARD** | REG.NO.: **28670-037** UNIT: **5 SCP** |
| Date of Incident Report: **01-07-2026** | Offense Code(s): **101A 115 199A 307** |
| Date of Incident: **12-17-2025** | |

Summary of Charges:

**101 -- ASSAULTING WITH SERIOUS INJURY (Attempting). (199 -- DISRUPTIVE CONDUCT-GREATEST (Aiding)) MOST LIKE 115 -- DESTROY/DISPOSE ITEM-SEARCH. 307 -- REFUSING TO OBEY AN ORDER.**

I. NOTICE OF CHARGE(S)

A. Advanced written notice of charge (copy of Incident Report) was given to inmate on **01-08-2026** at **1150 hrs** (by staff member) **ROMPALO**

B. The DHO Hearing was held on **02-05-2026** at **0800 hrs**

C. The inmate was advised of the rights before the DHO by (staff member): **B. Rakus** on **01-13-2026**

and a copy of the advisement of rights form is attached.

D. Delay in Process **Rewrite**

II. STAFF REPRESENTATIVE

A. Inmate waived right to staff representative: [Yes] _ [No] **X**

B. Inmate requested staff representative and **B. Williams, Automotive Worker Foreman** appeared.

C. Staff Representative's Statement:

**"He just wants me here to make sure his rights are not being violated. I did ask him why he did not stop when staff was telling him to and he stated, "I have PTSD, especially when a lot of staff are present. I didn't think anything of it because I know Mickatavage, I thought he was waving at me."**

D. Requested staff representative declined or could not appear but inmate was advised of option to postpone hearing to obtain another staff representative with the result that:

**NA**

E. Staff representative **NA** was appointed.

III. PRESENTATION OF EVIDENCE

A. Inmate (  ) admits ( **X** ) denies the charge(s).

B. Summary of Inmate Statement:

**"I received the incident report on the 17th. Pizzoli came down the next day and said, "You will be UDC'd the next day." On the 19th, Gipe talked to my cellie, not me, and talked to two other inmates. Pizzoli talked to me on the 6th and 7th and said that the process started over. I asked for a BP-8 because he got upset. On the 8th I got a copy of the rewrite which was three times the length of the original incident report. It took 21 days to UDC. They didn't arrest me. They explained I was being locked up for a 115. I asked the Officers to secure the video footage during the investigation and UDC hearing. I sent a copout to the Captain and talked to Warden Frith and Dowkus about the video and they all said the DHO will have it. Pizzoli said multiple times the DHO will have footage. On the 9th, Rakus said the DHO will have video footage. I**

**have been down 15 years and never a problem. The video was my defense, nothing else is important. In 2019 I had PREA on an officer and I always feel anxious around staff. I never thought to stop. Mickatavage and I have a good rapport. He was at the green house. I saw him and waved. I never steered the vehicle towards anybody. There was three inches of snow, the vehicle would have slid, and that was never omitted. There are 5 cameras out there, how is there no evidence. I was in the Visiting Room with everyone else after this happened and they took me to SHU."**

*****See attached written statements from inmate Wilford continuing his defense.*****

C. Witnesses

1. The inmate waived right to witnesses. [Yes] **X** [No] __

2. The following persons were called as witness at this hearing and appeared (Each witness name and statement listed below):
**NA**

3. The following persons requested were not called for the reason(s) given (Each witness name and statement listed below):
**NA**

4. Unavailable witnesses were requested to submit written statements and those statements received were considered (Each witness name and statement listed below):
**NA**

D. Documentary Evidence. In addition to the Incident Report and Investigation, the DHO considered the following documents:
**Incident Report - Staff Memorandums -- (BOP-IRMEM) of staff involved during the incident.**
**Administrative Detention Order -- (BP-A308) explaining reason why you were being transferred to the Special Housing Unit.**
**Incident Report - Staff Memorandums -- (BOP-IRMEM) from SIS stating due to the video surveillance system retention, the requested video could not be retrieved or preserved.**
**Warden UDC Extension Memo -- (UDC-EXT-M) stating there was a pause in the UDC hearing due to the incident report being returned for a re-write.**

E. Confidential information was used by DHO in support of his findings, but was not revealed to the inmate. The confidential information was documented in a separate report. The confidential information has been (confidential informants have been) determined to be reliable because:
**NA**

**BP-A0304** **DISCIPLINE HEARING OFFICER REPORT** **IR#: 4229600**

**Reg#: 28670-037**

**Dept. of Justice / Federal Bureau of Prisons** **WILFORD, RICHARD**

IV. FINDINGS OF THE DHO

_ A. The act was committed as charged.

**X** B. The following act was commmitted:

**101A, 115, 307**

_ C. No prohibited act was committed: Expunge according to inmate discipline PS.

V. SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS (Physical evidence, observations written documents, etc.)

**Your due process rights were read and reviewed with you by the DHO at that time of the hearing. You stated you understood your rights, had no documentary evidence to present, and did not request a witness. You requested Automotive Worker Foreman B. Williams as a staff representative. It should be noted there was a pause in UDC hearing due to the incident report being placed in rewrite status. Once the incident report was rewritten, the incident report was delivered withing 24 hours and the UDC hearing was conducted accordingly. At no time were your due process rights violated.**

**The DHO finds that on February 5, 2026, you committed the prohibited acts of Code 101A, Attempted Assault with Serious Injury, Code 115, Destroy/Dispose Item-Search, and Code 307, Refusing to Obey an Order.**

**The specific evidence relied upon includes the written statement of the reporting officer, B. Mickatavage, and stated, "This is a Re-Write. On December 17, 2025, at approximately 7:40 AM, while conducting a mass shakedown at the Camp, I attempted to stop an unidentified inmate driving a government vehicle (Ford regular cab pickup, white in color) behind Camp Food Service. While attempting to stop the vehicle, the inmate refused my order to pull over and submit to a search. The inmate then made an obscene hand gesture towards me, extending his middle finger upward while all others were closed in a fist. The inmate continued to operate the vehicle and attempted to flee from the parking lot at a high rate of speed. Had I not moved, I would have been struck by the vehicle the inmate was operating. The inmate navigated the vehicle in a manner that directly placed me in harm's way despite him having multiple avenues to avoid my person or that of other staff members in the immediate area. As the inmate passed me, I struck the rear quarter panel of the government vehicle with my right hand. I continued to issue direct orders for the inmate to cease operating the vehicle, which had negative results. The inmate fled the area in the government vehicle traveling on institution road in the direction of the FCI Powerhouse and garage area. Additional staff pursued the inmate utilizing a personal vehicle. The government vehicle in which the inmate was operating was located outside of an open bay door of outside garage and the engine was turned off. The inmate was located inside of the garage in the presence of the garage foreman. I positively identified the inmate as Wilford, Richard Reg. No., 28670-037 which was confirmed by the garage foreman and additional responding staff. The inmate's clothing also matched that of the inmate who was operating the government vehicle in the SCP Food Service parking lot. According to SENTRY, inmate Wilford is assigned to Camp General Maintenance #1 which allows him to drive a government vehicle as part of his job assignment. Inmate Wilford was searched for contraband which yielded negative results. Additionally, the government vehicle was searched which revealed negative results for hard contraband."**

**The DHO also considered the supporting staff memorandums of the officers that were present during the incident, Administrative Detention Order explaining why you were being placed in the Special Housing Unit, Warden UDC Extension Memo stating there was a pause in the UDC hearing due to being placed in re-write status, and SIS Memorandum stating due to the video surveillance system retention, the requested video could not be retrieved or preserved as evidence by the DHO.**

**During the investigation, you stated, "Not true." Then, during the UDC hearing, you stated, "I have a psychological condition." During this time, you requested video footage of the incident as evidence.**

You appeared before the DHO, and the DHO read the incident report aloud to you. You denied the charges and presented as your defense by stating, "I received the incident report on the 17th. Pizzoli came down the next day and said, "You will be UDC'd the next day." On the 19th, Gipe talked to my cellie, not me, and talked to two other inmates. Pizzoli talked to me on the 6th and 7th and said that the process started over. I asked for a BP-8 because he got upset. On the 8th I got a copy of the rewrite which was three times the length of the original incident report. It took 21 days to UDC. They didn't arrest me. They explained I was being locked up for a 115. I asked the Officers to secure the video footage during the investigation and UDC hearing. I sent a copout to the Captain and talked to Warden Frith and Dowkus about the video and they all said the DHO will have it. Pizzoli said multiple times the DHO will have footage. On the 9th, Rakus said the DHO will have video footage. I have been down 15 years and was never a problem. The video was my defense, nothing else is important. In 2019 I had PREA on an officer and I always feel anxious around staff. I never thought to stop. Mickatavage and I have a good rapport. He was at the green house. I saw him and waved. I never steered the vehicle towards anybody. There was three inches of snow, the vehicle would have slid, and that was never omitted. There are 5 cameras out there, how is there no evidence. I was in the Visiting Room with everyone else after this happened and they took me to SHU." It should be noted that you submitted personal documents titled "Declaration of Richard Anthony Wilford" and talking points for the DHO.

You wished to have a staff representative present during your DHO hearing. Officer Williams discussed your rights with you and presented evidence on your behalf during the hearing. Officer Williams stated, "He just wants me here to make sure his rights are not being violated. I did ask him why he did not stop when staff was telling him to and he stated, "I have PTSD, especially when a lot of staff are present. I didn't think anything of it because I know Mickatavage, I thought he was waving at me."

The DHO gave greater weight to the evidence from the reporting officer's written statement that during a mass shakedown, he tried to stop your vehicle to conduct a search for which you refused the order and drove to the outside garage. Supporting memorandums from the staff members that were present during this incident depict the same explanation of the incident that the reporting officer had to jump out of the way, so he didn't get hit by the vehicle. The officer's reaction to the miss was to strike the rear quarter panel of the vehicle with his right hand to try and catch your intention to stop the vehicle. You do not deny driving away from staff when they asked you to stop, but you state you did not know they were trying to stop you for a search of your vehicle. By the time the incident report got to pending DHO status, the video could not be preserved due to the video expiring. I questioned SIS if they saw the video, and they stated, "I see staff telling him to stop. The vehicle hits a blind spot, and you see staff running after the vehicle." The DHO understands you did request the video footage throughout the whole time of the incident to the DHO hearing, but the DHO gave greater weight of evidence due to the three supporting memorandums that justify the incident to be factual.

The DHO consulted with the Chief of Psychology due to your claims of PTSD. He stated, "He takes anxiety medications because he has a history of PTSD. Although he brought up his PREA case in 2019, there are no clinical concerns to justify his behavior." The DHO gave greater weight to your statement that you feel anxious when too many staff are around you. If Psychology is stating there are no clinical concerns to justify your behavior, you must have drove off due to your anxiety. Not complying with staff orders for you to stop your vehicle for a search during a mass shakedown explains why you are being held responsible for Code 115, Destroy/Dispose Item-Search, and Code 307, Refusing to Obey an Order. Code 101A, Assault with Serious Injury (Attempted) is warranted due to staff jumping out of the way of your moving vehicle in an attempt to try and stop you for a search of your vehicle. Had he been struck, the assault could have possibly been fatal.

Due to the greater weight of evidence from the reporting officer's written statement and three supporting staff memorandums, the DHO finds you did commit the prohibited acts of Code 101A, Attempted Assault with Serious Injury, Code 115, Destroy/Dispose Item-

**Search, and Code 307, Refusing to Obey an Order.**

VI. SANCTION OR ACTION TAKEN

**101A (FREQ 1)**
**DIS GCT 41 DAYS**
**LOSS OF COMMISSARY 180 DAYS THRU 8/3/26**
**LOSS OF EMAIL 180 DAYS THRU 8/3/26**

When imposing a sanction of Disciplinary Segregation (DS), The Discipline Hearing Officer considered the time served as a primary means when calculating your sanction of (DS). This may not always be a viable option, due to concerns related to the safety of staff, safety of inmates or safety and security of the institution.

VII. REASON FOR SANCTION OR ACTION TAKEN

**Assaulting, or attempted assaulting, another person seriously jeopardizes the safety of that person and disrupts the orderly running of the unit/institution. This act also creates a dangerous environment for responding staff and could ultimately create a more serious incident.**

**The action/behavior on the part of any inmate destroying or disposing of any item during a search poses a serious threat in that it could lead to injury to the inmate as well as staff. This act also jeopardizes the secure and orderly running of the institution and could escalate into confrontation between inmates and/or staff.**

**The action/behavior on the part of any inmate to refuse to obey an order given by any staff member interferes with the staff member's ability to complete assignments and the effectively deal with and control the inmates in the assigned work area.**

**The disallowance of GCT was imposed to comply with mandatory sanctioning guidelines for PLRA inmates. The loss of email was imposed to deter future misconduct. The loss of commissary was imposed to deter future misconduct.**

**BP-A0304** **DISCIPLINE HEARING OFFICER REPORT** **IR#: 4229600**

**Reg#: 28670-037**

**Dept. of Justice / Federal Bureau of Prisons** **WILFORD, RICHARD**

VIII. APPEAL RIGHTS: **X** The inmate has been advised of the findings, specific evidence relied on, action and reasons for the action. The inmate has been advised of his right to appeal this action within 20 calendar days under the Administrative Remedy Procedure. A copy of this report has been given to the inmate.

IX. Discipline Hearing Officer

| Printed Name | Signature | Date |
|---|---|---|
| **M. CONDIT** | **M. CONDIT** | **02-19-2026** |

DHO Report Delivered to Inmate by:

| Printed Name of Staff | Signature of Staff | Date & Time Delivered |
|---|---|---|
| **M. CONDIT** | **M. CONDIT** | **02-19-2026 0936 hrs** |

The Government Paperwork Elimination Act (GPEA) of 1998 authorized Federal Agencies the use of electronic forms, electronic filing, and electronic signatures to conduct office business.

**U.S. Department of Justice**
Federal Bureau of Prisons

*Federal Correctional Institution Schuylkill*
*Post Office Box 700*
*Minersville, Pennsylvania 17954*

**MEMORANDUM FOR DHO**

**FROM:** P. Hager Senior Officer Specialist

**SUBJECT:** Wilford

On December 17, 2025, at approximately while conducting a mass shakedown at the Camp, staff radioed for additional staff for assistance with an inmate fleeing in a vehicle, myself and other staff proceeded into a personal vehicle to pursue the inmate. Upon stopping at the garage area, I identified a pick up truck matching a description given to me. I left the vehicle I was in and investigated the truck. I opened the driver's side door and found the keys to the vehicle still in the ignition. I immediately secured the keys proceeded into the garage and questioned the garage foreman about the vehicle, while having the conversation inmate Wilford proceeded to interrupt the conversation and ask me "Did you take the keys out of the truck I was driving" I replied yes and ordered Wilford to submit to a pat search which he complied. The search produced negative results, I then ordered Wilford to come outside to which he complied. I escorted Wilford outside where additional staff were waiting outside. Wilford was identified positively by the staff requesting assistance as the driver of the vehicle that fled.

**U. S. Department of Justice**
*Federal Bureau of Prisons*

*Federal Correctional Institution Schuylkill*
*Post Office Box 700*
*Minersville, Pennsylvania 17954*

MEMORANDUM FOR FILE

FROM: M. Mazur, Senior Officer Specialist

SUBJECT: Inmate Wilford, Richard Reg. No. 28670-037.

On December 17, 2025 at approximately 7:40 A.M, While conducting a mass search of the Camp, I witnessesd Officer B. Mickatavage attempt to stop an unidentified inmate driving a government vehicle (Ford regular cab pickup, white in color) behind Camp Food Service. While Officer B. Mickatavage was attempting to stop the vehicle, the inmate refused his order to pull over and submit to a search. The inmate then made an obscene hand gesture towards all the staff that were present by extending his middle finger upward while all others were closed in a fist. The inmate continued to operate the vehicle and attempted to flee from the parking lot at a high rate of speed. I witness Officer B. Mickatavage jumping out of the vehicle way to avoid being struck by the vehicle the inmate was operating. Inmate Wilford, Richard Reg. No. 28670-037 refused to comply to Officer B. Mickatavge direct orders and continued to refused to stop for a search.

**U.S. Department of Justice**

Federal Bureau of Prisons

*Federal Correctional Institution Schuylkill*
*Post Office Box 700*
*Minersville, Pennsylvania 17954*

**MEMORANDUM FOR DISCIPLINE HEARING OFFICER**

**FROM:** R. Hablett, S.O.S.

**SUBJECT:** Inmate Wilford, Richard Reg. No. 28670-037

On December 17, 2025, at approximately 7:40 AM, while conducting a mass shakedown at the Camp, I attempted to stop an unidentified inmate driving a government vehicle (Ford regular cab pickup, white in color) behind Camp Food Service. While attempting to stop the vehicle, the inmate refused my order multiple times to pull over and submit to a search. The inmate continued to operate the vehicle in erratic behavior and attempted to flee from the parking lot at a high rate of speed. Had I not moved, I would have been struck by the vehicle the inmate was operating. The inmate navigated the vehicle in a manner that directly placed me in harm's way despite him having multiple avenues to avoid my person or that of other staff members in the immediate area. The inmate fled the area in a government vehicle traveling on institution road in the direction of the FCI Powerhouse and garage area. I pursued the inmate as a passenger in another staff member's personal vehicle. The government vehicle which the inmate was operating was located outside of the garage and the engine was turned off. The inmate was located inside of the garage in the presence of the garage foreman. I positively identified the inmate as Wilford, Richard Reg. No. 28670-037 which was confirmed by the garage foreman and additional responding staff. According to SENTRY, inmate Wilford is assigned to Camp General Maintenance #1 which allows him to drive a government vehicle as part of his job assignment. Inmate Wilford was searched for contraband which yielded negative results. Additionally, the government vehicle was searched which revealed negative results for hard contraband.

**U.S. Department of Justice**

Federal Bureau of Prisons

*Federal Correctional Institution Schuylkill*
*Post Office Box 700*
*Minersville, Pennsylvania 17954*

January 29, 2026

**MEMORANDUM FOR DHO FILE**

**FROM:** Christopher Rodgers, SIS Technician

**SUBJECT:** Video Request

On January 29, 2026, the acting Discipline Hearing Officer M. Condit requested a video pertaining to incident report number 4229600, in reference to inmate Wilford, Richard, Reg. No. 28670-037, which occurred on December 17, 2025, at approximately 7:40 a.m. Due to the video surveillance system retention, the requested video could not be retrieved or preserved.

# DECLARATION OF RICHARD ANTHONY WILFORD #28670-037

(28 U.S.C. § 1746)

I, Richard Anthony Wilford (ID# 28670-037), hereby certify and state:

1. On December 17, 2025, I was an inmate housed at the Federal Prison Camp in Minersville, Pennsylvania ("FPC Schuylkill") and worked in General Maintenance #1 assigned to operate a government vehicle for the collection and disposal of trash along Prison rd. and from unsecure buildings.
2. I certify that on the morning of 12-17-2025 I was operating a white Ford pick-up truck on camp grounds.
3. I certify that prior to 12-17-2025 psychology staff at the prison had never met with me for my PTSD.
4. I certify that on 12-17-2025 I did not operate any vehicle in a manner that directly placed B. Mickatavage or any other staff member in harms way, nor did I attempt to do so.
5. I certify that on 12-17-2025 I did not aide anyone in the destruction and/or disposal of anything.
6. I certify that on 12-17-2025, while being arrested on incident as alleged that morning, I requested counselor Mr. Rakus and arresting staff/officers to secure the camp video footage.
7. I certify that on 12-17-2025 I received incident report #4229600 while in SHU and wasn't advised of rights.
8. I certify that on 12-18-2025 Mr. Pizzoli (UDC chairman/unit mgr.) visited me at SHU Z-02 cell 119 and told me "After looking at the report I see no reason why you won't be out of here after DHO," "you will see UDC tomarrow," and reaffirmed that I would soon be back at the camp.
9. I certify that on 12-19-2025 Corey Gipe (UDC member/case mgr.) visited and spoke with my cell-mate Charles Evens ID# 24283-510 and then proceeded to cell Z-02-120 where he conducted UDC reviews for inmates O'conna and Santana, both of whom came to SHU ~~on~~ on 12-18-2025 from the camp.
10. I certify that on 12-29-2025 Mr. Mroczka (camp case mgr.) appeared at the door of my cell Z-02-119 and directly stated to me "you are referred and pending DHO."
11. I certify that on 1-6-2026 Mr. C. Pizzoli (UDC chairman/unit mgr.) again visited me in SHU, at Z-02 cell 120, and advised me "you are waiting for DHO and then you're getting shipped out." I asked "how could I be waiting for DHO without first seeing UDC?", and he replied "you did have UDC, I did it." I explained he "did not", then Mr. Pizzoli stated "well, the DHO kicked it back and they are going to do a re-write." I asked "how could they

do a re-write after three (3) weeks without UDC? is this to restart the process?" And Mr. Pizzoli answered "yes," "its like a "minor error," "like a word or something."

12. I certify that on 1-7-2026 Mr. Pizzoli again visited me and re-stated "they're doing a re-write," and that "you'll see UDC and DHO then get shipped." I then asked for BP-8.

13. I certify that on 1-8-2026, without being advised of rights R.W. [redacted], I was provided a re-write of incident report #4229600, adding substantial charge 101-Assult w/serious Injury (A).

14. I certify that on 1-9-2026 camp counselor Mr. Rakus visited for UDC review on the "re-write." I was [redacted] then asked for a statement. I did ask "how could they re-write the shot after three weeks of not conducting UDC hearing?" And Rakus stated "they do this all the time." After the review, he provided me with 1-9-2026 request for Advisement of Incident Report Delay" for "101-Assulting w/Serious Injury..."

15. I certify that on 1-1-2026 I presented SHU staff with written communication to Warden Frith concerning UDC procedural violation beyond the working 5-days on Incident Report #4229600.

16. I certify that at the time of or leading up to the incident as alleged in report #4229600 there were no established secure perimeter on the grounds of FPC-Schuylkill.

17. I certify that inmate Charles Evans #24283-510 did speak with Mr. Pizzoli, Mr. Gipe, and Mr. Mroczka during each of their visits to SHU Z-02 cells 119 and 120 on 12-18-2025, 12-19-2025, 12-29-2025, 1-6-2026, and 1-7-2026 and was a witness to each conversation between myself and these staff members.

18. I certify that on 12-17-2026, during the time of alleged incident (report #4229600), I was operating a white Ford pick-up truck on terrain covered with inches of snow.

19. I certify that on 1-14-26 Warden Frith stated "DHO would review video of 12-17-25 incident."

20. I certify that on 12-17-25, at time of incident, I was suffering from mental defect (anxiety/panic attack).

I declare, certify, and affirm that the above stated facts are true and correct to the best of my knowledge and understanding under penalty of perjury pursuant to 28 U.S.C. § 1746.

[signature]
Richard Anthony Wilford

Dated: January 12, 2026

TAKE!! Balspirone

# * Points For DHO Hearing *

*Ask if DHO previously sent case back - "Kick Back"

- Challenge sufficiency/Adequacy of charging instrument
  - report fails to state a claim
  - NO act on secure perimeter grounds
  - NO facts alleged to support charges
- (SEE BELOW ↓) Claim violation of ~~Challenge~~ Due Process and demonstrate resulting prejudice/harm
  - No permission to delay UDC past 5 days
  - impermissable delay pretext - New chrg
  - Delay Notice after Re-write
  - Staff aware of impermissable delay
- Ask for video footage of incident
  - Point out location of staff
  - Show NO Attempt Assult
  - 
- Ask for Investigative Reports showing Actions taking during investigation
  - NO referral for Ex-Investigation
  - NO initial Assult chrg
  - NO Assult investigation witness/victem interviews
- Ask for Mental Health docs evidencing PTSD and Prescription Meds

Inconsistencies in Incident Report:

- ~~fails to mention he knows me from work~~ fails to mention was on inches of snow over grass feilded area (NO secure perimeter)
- falsely claim to have "moved" from being struck (was never in direct path of vehicle) *Not in original
- Original says "proceeded" re-write says "Attempted" to speed away
- NO SECURE Perimeter
- NO signiture - NO identity of other staff witnesses/victems present
- Substantially differs from 1st report < fails to ~~make~~ MAKE claim or present facts alleging 101 & 115
- BELATED - NO prior Incident Report Delay Authorization

Requesting to be Charges ~~should~~ dismissed on Either of 2 grounds:

*1. Charging instrument ~~fails to state a claim~~ insufficient/inadequate of 100-series shot for which determination of guilt can be made here

2. Prejudicial substantive and procedural Due-Process violation(s) ~~resul~~ causing fatal defect in proceeding (NO Authorization for initial Delay - Re-write adds new charge) - subjected to loss of good time -

Defense

I experiencesed PTSD ~~defect~~ Episode and was unable to realize I should've stopped, and the wrongfulness of my conduct.

*

101 - Assulting any person, or an Armed Assult on the institution's secure perimeter

115 - Destroying and/or disposing of any item during a search or attempt to search

199 - conduct which disrupts or interferes with the security or orderly running of the institution

terrain
terrain terrain
terrain

digits

BP-A0306 **DUTIES OF STAFF REPRESENTATIVE** CDFRM
AUG 11
**U.S. DEPARTMENT OF JUSTICE** **FEDERAL BUREAU OF PRISONS**

FCI Schuylkill
Institution

TO: All Staff Representatives

FROM: Warden

There may be questions as to just which part an employee takes when that employee serves as staff representative for an inmate who appears before the DHO. Generally, your role is to help the inmate present the best defense possible to the charged violations. The Warden, the DHO, the reporting officer, investigating officer, a witness to the incident, and UDC members involved in the case may not act as staff representative. If, during your representation, you encounter difficulties which you believe will prevent you from functioning properly, you should notify the DHO of this, and he will excuse you if there is a good reason to do so.

(1) You are to assist the inmate in presenting whatever information the inmate wants to present and in preparing a defense. This will require, in every case, consultations with the inmate, and familiarity with the Inmate Discipline Program Statement.

(2) You are to speak to witnesses who might furnish evidence on behalf of the inmate, if the inmate indicates there are such witnesses whom the inmate wishes to have called. You may question witnesses requested by the inmate who are called before the DHO.

(3) You should become familiar with all reports relative to the charge against the inmate. Confidential or security information must of course be protected and may not be shared with any other person, including inmates, staff, visitors, attorneys, etc. Any request for confidential information should be directed to the DHO.

(4) You should present any evidence favorable to the inmate's defense.

(5) You should present information which may assist the DHO and which may obtain a lesser sanction for the inmate. If you believe you need additional time to pursue any of the functions, you may request a delay in the hearing from the DHO, but ordinarily only after you have the concurrence of the inmate to do this.

(6) You are to help an inmate understand the charges and the potential consequences.

(7) You should be familiar with procedures at the hearing, explain them to the inmate in advance, and, if necessary during the hearing, assist the inmate in understanding procedural points.

(8) You should not be present during deliberations by the DHO. An exception would be where you have read confidential information, and want to discuss that with the DHO outside the inmate's presence. In that case, you will have to explain to the inmate, in general terms, what you are doing, and you should leave the room as soon as that function is over.

(9) If the inmate asks you to assist in writing an administrative appeal from the DHO action, you should assist the inmate in doing so.

I have read the "Duties of Staff Representative" and (agree) (do not agree) to serve as staff representative for inmate Wilford, Richard, reg. no. 28670-037 in the inmate's appearance before the DHO. I do not agree for the following reason

---

Printed Name/Signature of Employee: Williams, Burt [signature] Date: 1/23/26

Record Copy - DHO